The Honorable Richard A. Jones

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## WESTERN DISTRICT OF WASHINGTON

10

11 | DAVID M. WALLOCH,

Case No.:  **2:14-01727-RAJ**

12 |               Plaintiff,

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CAUSES OF ACTION**

13 |         v.

14 | FEDERAL EXPRESS CORPORATION, a Delaware Corporation, d/b/a FEDEX CORPORATE SERVICES, INC., d/b/a FEDEX GROUND PACKAGE SYSTEM, INC.,

15

16

**NOTE ON MOTION CALENDAR: January 15, 2016**

17 |               Defendants.

18
19
20
21
22
23
24
25
26

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

## **Table of Contents**

I.    INTRODUCTION ................................................................................................. 1

II.   UNDISPUTED MATERIAL FACTS ................................................................... 1

    A.    Relevant Federal Express Corporation Policies. ........................................ 1

    B.    Walloch's Employment as a Ramp Transit Driver at FedEx. ..................... 3

    C.    Walloch's Medical Leaves of Absence. ...................................................... 3

    D.    Management Addressed Walloch's Concerns about Working Unsafely in
        Heavyweight. .............................................................................................. 4

    E.    FedEx Engaged Walloch in the Interactive Process and Accommodated Him. ........... 6

    F.    Walloch Filed an Internal EEO claim, Appealed his Termination and Sued FedEx .. 11

III.    LEGAL ARGUMENT AND ANALYSIS ..........................................................11

    A.    The Shifting Burdens of Proof Under McDonnell Douglas Apply to WLAD
        Claims. ...................................................................................................... 11

    B.    Walloch Fails to Establish Claim for Failure to Accommodate Disability. ............... 12

    C.    Walloch Fails to Establish a Claim of Retaliation. ................................... 16

        1.    Walloch Cannot Establish a Prima Facie Case. ............................... 17

        2.    Walloch Cannot Establish Pretext. ................................................... 17

    D.    Walloch Fails to Establish a Claim of Disability Discrimination. ............ 19

        1.    Walloch Cannot Establish a Prima Facie Case. ............................... 20

        2.    FedEx's Legitimate Reason for Terminating Walloch is Not a Pretext .............. 20

    E.    Walloch Cannot Establish a Claim for Age Discrimination. ..................... 22

        1.    Walloch Cannot Establish a Prima Facie Case of Age Discrimination. ............. 22

        2.    Walloch Cannot Establish FedEx's Reasons Are a Pretext for Discrimination ... 23

IV.    CONCLUSION ..................................................................................................24

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

i

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

**CASES**

*Atkinson v. UPS*, No. C94-5600FDB, 1996 U.S. Dist. LEXIS 7733 (W.D. Wash. 1996) ................................................................................................ 14, 15

*Callahan v. Walla Walla Housing Auth.*, 110 P.3d 782 (Wash. App. 2005) ........................... 20

*Chen v. State*, 86 Wash. App. 183, 937 P.2d 612 (1997) ........................................... 22

*Davis v. Boeing Co.*, No. C11-1033-JCC, 2012 U.S. Dist. LEXIS 152245, 2012 WL 5248752 (W.D. Wash. Oct. 23, 2012) ................................................. 18, 21

*Davis v. Microsoft Corp.*, 149 Wn.2d 521 (2003) ...................................................... 12

*Diederich v. Providence Health & Svcs.*, No. C10-1558 RAJ, 2012 U.S. Dist. LEXIS 139717 (W.D. Wash. Sept. 26, 2012) ............................................... 20

*Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 98 P.3d 1222 (Wash. Ct. App. 2004) .................................................................... 12

*Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn. App. 774, 120 P.3d 579 (2005) ................................................................................. 17

*Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765 (Wash. Ct. App. 2011) .................. 13, 16

*Garcia v. Cintas Corp.*, CV-12-3064-RMP, 2013 U.S. Dist. LEXIS 53231 (E.D. Wash. April 12, 2013) ........................................................................ 14

*Goodman v. Boeing Co.*, 127 Wn. 2d 401, 899 P.2d 1265 (1995) ................................. 12

*Grantz v. State Farm Mut. Auto. Ins. Co.*, 420 Fed. Appx. 692 (9th Cir. 2011) ................ 18, 21

*Griffith v. Boise Cascade, Inc.*, 111 Wn. App. 436, 45 P.3d 589 (2002) .......................... 13

*Hargrave v. Univ. of Wash.*, 2015 U.S. Dist. LEXIS 86732 (W.D. Wash. July 1, 2015) ................................................................................. 24

*Hawley v. Travelers Cos.*, 2015 U.S. Dist. LEXIS 54122 (E.D. Wash. Apr. 24, 2015) ................................................................. 14, 15, 16, 18

*Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 23 P.3d 440 (2001) ............................ 12, 18

*Holland v. Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978) ...................................... 13

*Huge v. Boeing Co.*, 2015 U.S. Dist. LEXIS 147749 (W.D. Wash. Oct. 30, 2015) ............... 12

*Kelly v. County of Ventura Pers. Dep't*, 28 F.3d 106 [published in full-text format at 1994 U.S. App. LEXIS 18890] (9th Cir. 1994) ....................................... 17

*Kries v. WA-SPOK Primary Care, LLC*, 2015 Wash. App. LEXIS 2190 (Wash. Ct. App. Sept. 10, 2015) ................................................................. 12

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

ii

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

*McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006) ................................... 12, 13, 14

*McDaniels v. Group Health Coop.*, 57 F. Supp. 3d 1300 (W.D. Wash. 2014) ........................ 22

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ............................................................................................................... 11

*Molloy v. City of Bellevue*, 859 P.2d 613 (Wash. App. 1993) .................................... 15

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004) ............................... 22

*Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 9 P.3d 787 (2000) ................................... 13, 14

*Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000) ....................................................... 17

*Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045 (9th Cir. 1995) ................................... 16

*Snapp v. Burlington N. Santa Fe Ry.*, No. 10-CV-05577-RBL, 2012 U.S. Dist. LEXIS 109258, 2012 WL 3157137 (W.D. Wash. Aug. 3, 2012) ........................ 18

*Snapp v. Burlington Northern Santa Fe Railway*, No. 10-cv-05577-RBL (W.D. Wash. Aug. 3, 2012) ........................................................................................ 21

*Wade v. Premera Blue Cross*, No. CV-10-217-RMP, 2012 U.S. Dist. LEXIS 565, at *24 (E.D. Wash. 2012) .................................................................................... 12

*Williams v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 72722, 7-8 (W.D. Wash. May 22, 2013) ............................................................................................... 12

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991) .................... 17

**RULES**

RCW § 49.60.040(7)(a) .................................................................................... 24

RCW § 49.60.180 ............................................................................................ 23

RCW § 49.60.180(2) ....................................................................................... 15

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

iii

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

## I.      **INTRODUCTION**

Summary judgment as to the entire action is appropriate here for the reasons articulated below. Partial summary judgment as to each cause of action is appropriate based on the following:

ISSUE NO. ONE: FedEx is entitled to judgment on the First Cause of Action for Failure to Accommodate under the Washington Law Against Discrimination (WLAD) because Plaintiff cannot establish a prima facie case and cannot establish FedEx's asserted reason for its actions is a mere pretext.

ISSUE NO. TWO: FedEx is entitled to judgment on the Second Cause of Action for Retaliation under the WLAD because Plaintiff cannot establish a prima facie case and cannot establish FedEx's asserted reason for its actions is a mere pretext.

ISSUE NO. THREE: FedEx is entitled to judgment on the Third Cause of Action for Disability and Age Discrimination under the WLAD because Plaintiff cannot establish a prima facie case and cannot establish FedEx's asserted reason for its actions is a mere pretext.

This motion is based on the Declarations of Thomas Embleton, Laurie Watson, Linda Pietrzak, John Power, Vicki Schrepfer, Shawn Moncivaiz and Jane M. Flynn, all of the files in this action, and on such oral and documentary evidence as may be presented at the hearing, if any.

## II.      **UNDISPUTED MATERIAL FACTS**

### A. **Relevant Federal Express Corporation Policies.**

FedEx's policies are contained in its People Manual, which is accessible to employees online and in hardcopy. Policies are also in the Employee Handbook, which is distributed to all employees. (Declaration of Laurie Watson (Watson) ¶ 3) Walloch understood his employment was subject to FedEx's policies. (Deposition Transcript of David Walloch ("Walloch") 23:21-24:9, Exh. A to Declaration of Jane Flynn ("Flynn")) [1]

FedEx maintains an Equal Employment Opportunity Policy (Policy 4-55), extending equal employment opportunity to all qualified individuals including disabled persons. Under its Disabled

---

[1] Citations to Walloch's deposition are formatted as page:line-line and page:line-page:line.

MOTION FOR SUMMARY JUDGMENT                    1
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

Individuals Policy (Policy P5-35), FedEx takes affirmatives steps to employ and advance the employment of qualified disabled individuals and provide reasonable accommodation. FedEx policy requires no full duty release to return to work; an employee can be released with or without restrictions, and restrictions are accommodated where feasible. (Watson ¶¶ 4, 5 & Exhs. 1, 2)

FedEx's Leave of Absence (Medical) Policy (Policy P1-8) establishes its medical leave of absence process for hourly employees like Walloch. FedEx provides up to a maximum of 365 days of leave for employees not receiving short-term (STD) or long-term disability (LTD) insurance coverage through FedEx's disability insurance plan. Aetna manages STD and LTD for FedEx and determines whether an employee qualifies for coverage under the plan and notifies FedEx. Aetna does not provide FedEx with medical reports or information due to HIPAA restrictions. (Watson ¶¶ 5, 6 & Exh. 3) Sedgwick manages workers compensation issues for FedEx and determines whether an injury is work-related and whether to approve requested treatment. FedEx plays no role in these determinations. Sedgwick gives FedEx the restrictions on an employee's ability to work, but does not provide medical reports or information due to HIPAA restrictions. (Watson ¶ 7)

Medical leaves of absence are managed by employees in FedEx's Human Capital Management Program ("HCMP"). HCMP also engages employees in the interactive process, manages requests for accommodation and the return to work. (Watson ¶ 8) An employee with temporary restrictions may be provided with light duty, called "TRW," if it is available. If TRW is not available, the employee will continue on his leave of absence as an accommodation. Per Policy P1-8, if a medical leave exceeds 90 days, management can fill the employee's position if required by operational need. HCMP notifies the employee their leave has exceeded 90 days and they may be displaced from their position. (Watson ¶ 9, 10) HCMP works with employees who have restrictions to determine if their restrictions can be accommodated. FedEx makes reasonable accommodations where operational need and corporate resources permit. An employee may return to his former position if it is available and if he can perform its essential functions with or without accommodation. A displaced employee has 90 days to get a position for which he is qualified and

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    2
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

can perform its essential functions with or without accommodation. (Watson ¶ 10)

FedEx gives employees with permanent restrictions or employees in the final 90 days of their leave priority placement for any open lateral or lower level position for which they qualify and submit an application. HCMP sends the employee weekly Career Opportunities postings, which list all open positions at FedEx. Both HCMP and the employee review the open positions to identify positions the employee is qualified for and can perform with or without accommodation. HCMP asks the employee for a resume and updated medical information to assist in identifying positions for which the employee is qualified. HCMP submits unlimited applications for positions the employee expresses an interest in accepting. Employment is terminated if the employee fails to secure a position before they reach maximum duration of their leave. (Watson Decl. ¶¶ 10, 11, 12).

**B. Walloch's Employment as a Ramp Transit Driver at FedEx.**

In 2011, David Walloch worked as a Ramp Transport Driver (RTD) wherein his job was to deliver freight in containers (CTVs), switch trailers, and load and unload freight into a trailer for delivery. He had to lift up to 75 pounds and unload freight alone at the clients' location. (Walloch 33:10-18, 33:22-34:12, 35:11-23; Watson ¶ 13 & Exh. 7)

In March 2012, Walloch accepted a RTD position for Route 978 in FedEx's heavyweight division, which handles freight weighing over 150 pounds, freight that is palletized and freight that exceeds certain dimensions. Walloch also broke-up palletized freight and delivered it individually. (Walloch 14:14-15:15, 45:2-4 & Exh. 2) Walloch got help lifting at FedEx, but had no help when on-road where he maneuvered freight over 150 pounds without assistance using a hand truck, a pallet jack and a lift-gate. Walloch asked for help on-road, but typically no one was available. Most freight weighed over 150 pounds. (Walloch 17:14-18:7, 15:20-16:13, 51:5-9, 65:10-21)

**C. Walloch's Medical Leaves of Absence.**

In 2011, Walloch went on a medical leave of absence after he injured his back. HCMP Manager Laurie Watson managed Walloch's leave. (Watson ¶ 13 & Exh. 4) Walloch worked light duty (TRW) until there was no light duty available. In March 2012, Dr. Emmons released Walloch

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                3
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

to return to work without restriction. (Walloch 33:10-18, 42:19-43:13, 44:1-4, 53:24-54:11 & Exh. 4; Watson ¶ 13 & Exh. 5) He accepted an RTD job on Route 978 in FedEx's heavyweight division because it was an opportunity to work full-time. (Walloch 46:25-47:11; Watson ¶ 13 & Exh. 6)

On October 2, 2012, Walloch went on a medical leave of absence due to a back injury. Watson assisted Walloch with his leave of absence and sent him correspondence regarding his leave and copies of relevant FedEx policies, including P1-8 Medical Leave of Absence. (Walloch 68:1-23 & Exh. 10; Watson ¶¶ 15, 17 & Exh. 9) In her October 2nd letter, Watson stated Walloch's job would be held for him for 90 days. She also stated if he was released to return to work with permanent restrictions he would be given preferential placement for any lower or lateral level job for which he was qualified and could perform <u>with or without accommodation</u>. (Watson Exh. 9 at pg. FXC 12-313) Walloch sent Watson an October 22, 2012 note from Dr. Emmons restricting Walloch from lifting, pushing or pulling over 25 pounds. (Walloch 69:20-70:10 & Exh. 11; Watson ¶ 15) Walloch could not perform his RTD job in the heavyweight division with a 25 pound lifting, pulling, pushing restriction. (Walloch 40:1-4; Watson ¶ 15) Walloch believes that the 25-pound restriction remained in effect during the entirety of his leave of absence. (Walloch 70:19-24) Walloch remained on this leave until his employment terminated November 26, 2013. (Walloch 22:8-10; Watson ¶ 36)

While on leave, Walloch received wage replacements through FedEx's STD and LTD insurance policies until June 2013. (Watson ¶ 29)

**D. Management Addressed His Concerns about Working Unsafely in Heavyweight.**

RTDs must be able to lift up to 75 pounds unassisted and maneuver a package <u>of any weight</u> over 75 pounds with equipment or assistance. In the heavyweight division, nearly every package exceeds 150 pounds, is on pallets, and is bulky and awkward. At times, a RTD breaks down palletized freight and delivers packages individually with a hand truck. RTDs can leave palletized freight on a customer's loading dock when delivery cannot be made safely. RTDs can bring freight back to FedEx as 'undeliverable' due to safety reasons and are not disciplined for

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                4
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

1   doing so. (Declaration of Vicki Schrepfer (Schrepfer) ¶¶ 3, 6)

2       In March 2012, Walloch told Senior Manager Thomas Embleton that Walloch would code

3   freight "undeliverable" if the loading dock was too short to deliver freight safely. (Declaration of

4   Thomas Embleton (Embleton) ¶ 7 & Exh. 1) Walloch also refused to deliver freight. (Embleton ¶

5   9 & Exh. 3) Embleton told Walloch if he felt he could not deliver a package safely he should tell

6   the customer and bring the package back to FedEx. (Walloch 20:24-21:14, 56:1-57:9 & Exh. 5;

7   Embleton ¶ 8 & Exh. 6) Embleton accompanied Walloch on a delivery where the package could

8   not be delivered safely and was returned to FedEx. Walloch was not disciplined for refusing to

9   deliver freight he felt could not be delivered safely. (Walloch 21:15-22:7; Embleton ¶¶ 6-9)

10      Walloch complained he had to deliver freight in an unsafe manner due to the height of his

11   truck, format of delivery locations and size / condition of freight. (Walloch 18:14-19:21) Although

12   Walloch complained his truck was too tall and did not align with delivery loading docks, he had

13   the shortest truck available that was big enough to deliver the freight on Route 978. (Walloch

14   57:10-20) Station Manager Vicki Schrepfer went on-road with Walloch to evaluate his complaints

15   about working unsafely. (Walloch 19:22-20:6, 62:16-63:7, 63:14-64:14 & Exhs. 7, 8; Schrepfer ¶

16   7) Schrepfer told Walloch if there was a delivery he could not make safely to let her know and she

17   would go with him to see if there was a place to unload it safely. (Walloch 64:15-19) Schrepfer

18   told Walloch if he could not deliver freight safely to bring it back. (Schrepfer ¶ 7 & Exh. 1)

19      It appears Walloch ignored his management's instruction to bring freight back to FedEx if

20   he could not deliver it safely. Walloch stated in his internal EEO complaint he knew he could bring

21   packages back to FedEx, but he felt the customer deserved to have the package delivered on-time.

22   (Walloch 162:12-17 & Exh. 39; Declaration of Linda Pietrzak ("Pietrzak"), Exh. 1 at FXC 5-7)

23      While on Route 978, Walloch asked to be moved to another route, but there were no open

24   routes at that time. (Walloch 60:13-61:1) Employees can only change routes if there is an open

25   route available. Employees bid on open routes and the route is assigned based on seniority.

26   (Walloch 61:2-62:7; Schrepfer ¶ 5)

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT     5
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

### E. FedEx Engaged Walloch in the Interactive Process and Accommodated Him.

When Walloch went on leave in October 2012, HCMP Watson asked Senior Manager Embleton if there was TRW available within Walloch's 25-pound restriction. Embleton had no TRW available within Walloch's restrictions. Watson knew from the other leaves of absence she managed that the other Seattle-area locations also did not have TRW available. Embleton asked Seattle Senior Manager Spencer Hansen if he had TRW available for Walloch, but Hansen did not. (Watson ¶ 18; Embleton ¶ 16 & Exh. 4)

At Sedgwick's request, a workers compensation IME was conducted by Dr. Levine, who issued a December 6, 2012 report restricting Walloch to lifting only 40-50 pounds regularly. Neither Walloch nor Sedgwick sent Watson a copy of Dr. Levine's report. (Walloch 72:10-24, 73:13-74:17 & Exh. 12 at FXC 28-132; Watson ¶ 27) Walloch and his doctor did not agree with Dr. Levine's assessment of Walloch's ability to lift. Walloch believed he could only lift 40-50 pounds intermittently. (Walloch 125:8-126:20, 42:2-18) Walloch and Watson exchanged emails in February 2013 regarding Levine's report. Watson stated she did not have the report and asked Walloch for updated medical restrictions. Walloch did not send Watson an update because he believed the 25-pound restriction still applied. (Walloch 95:16-96:16 & Exh. 19; Watson ¶ 27 & Exh. 30) On February 18th, Walloch sent Watson a letter stating his condition was unchanged from October, and he included a copy of the October 22nd note restricting Walloch lifting only 25 pounds. (Watson ¶ 23 & Exh. 17)

Walloch knew Watson was his point of contact for finding a new position and receiving an accommodation. (Walloch 80:6-20 & Exh. 14) In January 2013, Walloch complained Sedgwick was not processing his workers compensation claim adequately after Sedgwick denied the claim. Walloch's treatment for his back injury was delayed because he was trying to cover it through workers compensation instead of his FedEx healthcare insurance. Walloch could have procured treatment through insurance (Walloch 88:10-20, 95:3-15; Watson ¶ 16) Watson contacted Sedgwick to ensure Walloch's claim was handled timely. Watson responded to Walloch, asked if

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    6
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

he wanted to request an accommodation to extend displacement from his position and sent an accommodation request form. (Walloch 81:25-82:23 & Exh. 14; Watson ¶ 19 & Exh. 10)

Despite Watson's suggestion Walloch give a specific amount of time to delay his displacement, Walloch requested an indefinite extension. (Walloch 83:2-21, 86:5-87:19, 90:13-17 & Exh. 15 at FXC 5-167; Watson ¶¶ 19, 20 & Exhs. 10, 11) FedEx denied the request for an indefinite extension. Walloch submitted no medical documentation indicating when he could return to his position. Covering Route 978 in Walloch's absence was placing a financial strain on the station. (Walloch 88:4-9 & Exh. 16; Watson ¶ 20 & Exhs. 12, 13, 14; Embleton ¶ 17 & Exh. 5) Walloch's 90-day job protection ended January 8th. FedEx did not displace Walloch from his position until February 4th, 117 days after he began his leave of absence. (Walloch 93:18-94:23 & Exh. 18; Watson ¶ 21 & Exh. 15) Although Walloch claimed Derek Johnson received an infinite delay of his displacement date, Walloch admits he had no knowledge this was true and that he was not aware of any employee who received an indefinite delay of their displacement date. (Walloch 89:12-90:8) Johnson did not get an indefinite delay of his displacement. (Watson ¶ 20)

In March 2013, Walloch said he would be released to work and able to lift 75 pounds in 3-4 weeks. As a result, Watson looked for an open job for Walloch. Watson sent Walloch copies of the Career Opportunities and continued to send them to Walloch for the duration of his leave. (Watson ¶¶ 24 & Exh. 18) Watson suggested open positions to Walloch. Walloch was only interested in applying for a part-time RTD position and a Dispatcher position. Watson asked if Walloch was asking for an accommodation for the RTD's lifting requirements and sent Walloch an accommodation request form. (Walloch 124:4-125:7 & Exhs. 24, 25; Watson ¶ 25 & Exh. 21)

Watson assisted Walloch with his application for the RTD position, and suggested he seek accommodation because it required him to lift up to 75 pounds and maneuver over 75 pounds. Walloch submitted an accommodation request that he be given an assistant to ride with him for 30 days. (Watson ¶ 26 & Exhs. 24, 25, 26) The RTD position required Walloch to off-load his truck and assist the heavyweight division and assist with sorting packages at FedEx. (Declaration of

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    7
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

Shawn Moncivaiz ¶ 3) Walloch applied for the part-time RTD position and asked FedEx to provide an assistant to ride with Walloch on his route for 30 days to lift, load and unload freight over his lifting restriction. (Walloch 107:16-108:14, 115:23-116:14, 121:15-25 & Exhs. 21, 22, 23; Watson ¶ 24) FedEx denied Walloch's request because it was burdensome to hire another employee to accompany Walloch on his route and there was no medical support for his claim he would meet the lifting requirement within 30 days or any time frame. (Walloch 111:10-16, 111:25-112:14 & Exh. 22; Watson ¶ 27 & Exhs. 27, 28, 29) Walloch was not released to lift 75 pounds within 30 days of his accommodation request, and admits he would have needed assistance with lifting, loading and unloading for an indeterminate amount of time. (Walloch 108:15-21, 121:3-14)

Even though he did not believe it was true, Walloch told HCMP Senior Manager Jennifer Ramos he could lift 40-50 pounds based on Dr. Levine's December 6th report because Walloch wanted to return to work. (Walloch 125:8-126:20 & Exh. 26) Walloch never forwarded Dr. Levine's report to Watson. At the time of his request for accommodation, Walloch could not load, unload or lift over 25 pounds. (Walloch 126:21-129:12, 109:4-10)

Watson assisted Walloch with his application for a Dispatcher position. The top candidate was selected for the Dispatcher position over Walloch because at that time he did not have priority placement under Policy P1-8. Policy P1-8 gives priority placement if the employee is released without restrictions or with permanent restrictions and if the employee is within the last 90 days of his leave. Neither was true at that time for Walloch. (Walloch 122:14-123:16, 92:2-93:12 & Exhs. 24, 29; Watson ¶ 25 & Exhs. 22, 23)

Watson continued to send Walloch copies of the Career Opportunities and reviewed them herself to see if there were any jobs Walloch could perform within his 25-pound limitation. (Watson ¶¶ 24, 28) After Aetna denied Walloch claim for LTD, he was subject to the 365-day maximum duration of leave. Watson sent Walloch a July 22, 2013 letter detailing FedEx policy, including: (1) he had until the expiration of his leave on Oct. 8, 2013 to seek a position for which he met the minimum specifications and could perform the essential functions <u>with or without</u>

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    8
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

reasonable accommodation; (2) he had to provide medical documentation to support his ability to perform any position for which he applied; (3) he would receive placement preference for any lateral or lower level position for which he was qualified and completed the selection process; (4) he could submit unlimited applications for positions; (5) job functions for certain positions could be restructured depending on the work location, staffing and other operational considerations; (6) he should contact Watson to inquire whether FedEx could accommodate him in a particular position in Career Opportunities and accommodation decisions are made by the HCMP Committees case by case; (7) he would be assisted in applying for any posted positions for which he meet the requirements, with or without an accommodation, and expressed an interest; (8) Watson would review lateral and lower level positions that became available within the local area prior to posting for possible placement opportunities, if available; and (9) he was responsible for actively pursuing positions of interest to him. (Watson ¶¶ 29-32 & Exh. 31; Walloch 122:14-123:16, 129:13-130:3, 133:4-25 & Exhs. 28, 30)

Watson asked Walloch to send his resume to assist in the job search. Walloch never forwarded his resume. During the last 90 days of his leave, he did not communicate interest in applying for any position to Watson. (Walloch 130:5-131:7, 139:2-7; Watson ¶ 31 & Exh. 31, 34) Walloch testified he could have performed the duties of a CSA, a Dispatcher or a Ramp Agent when he was looking for a replacement position in 2013. Walloch saw no open Ramp Agent positions. Walloch saw no CSA jobs he was interested in applying for because they were all part-time positions. According to Walloch, during the final 90 days of his leave there was no open position for him to apply for and he saw no open jobs he qualified for in the Career Opportunities postings he received. (Walloch 29:9-30:9, 134:12-14, 128:25-129:12, 139:21-140:7)

In August 2013, after Aetna denied Walloch's LTD, triggering the 365-day maximum duration provision, Watson suggested Walloch ask for an extension of his leave as an accommodation and sent him an accommodation request form. (Watson ¶ 32 & Exhs. 32, 33, 34) Walloch requested a 225-day extension of his leave so he could sue Aetna over its denial of his

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    9
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

1   LTD benefits. (Walloch 142:8-143:10 & Exh. 36; Watson ¶ 32 & Exh. 35) FedEx denied the

2   request because Walloch submitted no new medical documentation to support his claim for LTD

3   and because FedEx generally does not provide an extension of leave for litigation. Instead, FedEx

4   extended Walloch's leave to November 26th to allow more time to find a replacement position.

5   Watson informed Walloch if he successfully appealed his LTD claim, his employment would be

6   reinstated. Walloch did not in fact sue Aetna for denial of LTD benefits. (Walloch 140:25-141:16,

7   144:24-145:8, 146:7-10 & Exh. 37; Watson ¶ 32, 33 & Exhs. 36-38)

8        On August 26, 2013, Watson sent Walloch a letter notifying him he had 90 days to find a

9   replacement position. Watson told Walloch she would assist him with the application process, he

10  could submit unlimited JCATS applications, and job functions for some positions could be

11  restructured. Watson told Walloch to contact her regarding possible accommodations for any

12  position in the Career Opportunities, which she sent Walloch weekly (Watson ¶ 33 & Exh. 38)

13        In September 2013, a part-time Dispatcher position was available. Watson brought the

14  Dispatcher position to Walloch's attention, entered him into FedEx's JCATs system to apply for

15  the opening and notified the hiring manager Walloch had priority placement for the position.

16  Walloch told Watson he was not interested in the Dispatcher position because he needed full-time

17  work. Walloch had been interested in the part-time RTD position, and testified he was interested in

18  part-time positions if it led to full-time. He nonetheless rejected the part-time Dispatcher position.

19  Had Walloch applied for the Dispatcher position, he would have received it based on his priority

20  placement and seniority. The Dispatcher position Walloch rejected became full-time within a few

21  months. (Walloch 32:2-6, 33:7-9, 135:22-137:19 & Exh. 32; Watson ¶ 34 & Exhs. 39-42) During

22  the remainder of Walloch's leave, Watson saw no other open lower or lateral positions she

23  believed Walloch could perform with his restrictions. (Watson ¶ 35)

24        On November 26, 2013, Watson terminated Walloch's employment because he had

25  exceeded his maximum duration of leave and had not obtained a replacement position. Watson

26  offered to continue to send Walloch copies of the Career Opportunities for 90 days and assist him

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

10

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

with applying for any open position he felt he could perform and was qualified to perform. (Watson ¶ 36 and Exhs. 43, 44; Walloch 139:8-140:4 & Exhs. 34, 35)

### F. Walloch Filed an Internal EEO claim, Appealed his Termination and Sued FedEx.

In September 2013, Walloch filed an internal EEO claim with FedEx. HR Advisor Linda Pietrzak investigated Walloch's claims of disability and race discrimination and found that local management had not violated FedEx's policy against discrimination. (Pietrzak ¶¶ 3-7) Pietrzak investigated Embleton and Schrepfer's response to Walloch's claim he was worked beyond the scope of his heavyweight RTD job, causing an unsafe condition and further injury to his back. Pietrzak concluded management had responded appropriately to Walloch's concerns and that Walloch did not have to work beyond his job description. (Pietrzak ¶ 5) Pietrzak investigated the claim FedEx created a Dispatcher position for Derek Johnson rather than terminate him for cause. Pietrzak determined Johnson was displaced from a driver position and applied for an open, posted Dispatcher position, which he received after an interview and being ranked as the top candidate. (Pietrzak ¶ 6) Pietrzak also investigated the claim Walloch should have received the full-time Dispatcher position in March 2013. Pietrzak concluded there was no policy violation because Walloch did not have priority placement at the time and was not the top candidate. (Pietrzak ¶ 7)

Walloch utilized FedEx's internal appeal process (GFTP) to challenge his termination. The termination was upheld by FedEx through the GFTP process. (Walloch 146:11-20; Pietrzak ¶ 8) Walloch filed his Complaint on November 3, 2014. In his Complaint, Walloch alleged three claims under WLAD: (1) Failure to Accommodate; (2) Retaliation; and (3) Age and Disability Discrimination. (Complaint, Docket # 1, Exh. 2)

### III.  LEGAL ARGUMENT AND ANALYSIS

### A. The Shifting Burdens of Proof Under McDonnell Douglas Apply to WLAD Claims.

Washington courts analyze WLAD claims on summary judgment using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Williams v. Fed. Express Corp.*, 2013 U.S. Dist. LEXIS 72722, 7-8 (W.D.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    11                    JANE M. FLYNN, ESQ.
Case No.:  2:14-01727-RAJ                                        FEDERAL EXPRESS CORPORATION
                                                                2601 Main Street, Suite 340
                                                                Irvine, CA 92614, T (949) 862-4643

Wash. May 22, 2013), citing *Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 98 P.3d 1222, 1225 (Wash. Ct. App. 2004)). Under this framework, the plaintiff has the initial burden of proving a prima facie case of employment discrimination. *Williams, id*. Once the plaintiff establishes a prima facie case, an inference of discrimination arises. To rebut this inference, the employer must present evidence it had a legitimate nondiscriminatory reason for its actions. The burden then shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. If a plaintiff cannot establish specific and material facts to support each element of the prima facie case, or if the plaintiff cannot present evidence that the defendant's reasons are untrue or mere pretext, the defendant is entitled to judgment as a matter of law. *Williams, id*.

### B. Walloch Fails to Establish Claim for Failure to Accommodate Disability.

To establish a claim under the WLAD for failure to accommodate a disability, Walloch must show: (1) he had a sensory, mental, or physical abnormality substantially limiting his ability to perform the job; (2) he was qualified to perform the essential functions of the job; (3) he gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures available to the employer and medically necessary to accommodate the abnormality. *Wade v. Premera Blue Cross*, No. CV-10-217-RMP, 2012 U.S. Dist. LEXIS 565, at *24 (E.D. Wash. 2012) (emphasis added); *Kries v. WA-SPOK Primary Care, LLC,* 2015 Wash. App. LEXIS 2190, *57 (Wash. Ct. App. Sept. 10, 2015) (citing *Davis v. Microsoft Corp.*, 149 Wn.2d 521 (2003); *Hill v. BCTI Income Fund-I,* 144 Wn.2d 172, 192-93, 23 P.3d 440 (2001), overruled on other grounds by *McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006); *Huge v. Boeing Co.*, 2015 U.S. Dist. LEXIS 147749 (W.D. Wash. Oct. 30, 2015). Here, Walloch's claim fails because he cannot establish FedEx failed to affirmatively adopt measures available and medically necessary to accommodate Walloch.

After receiving notice of an employee's disability, an employer must take "'positive steps' to accommodate the employee's limitations." *Goodman v. Boeing Co*., 127 Wn. 2d 401, 408, 899 P.2d 1265, (amended Sept. 26, 1995) (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 388-89, 583

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

12

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

P.2d 621 (1978)). Reasonable accommodation involves an exchange of information between an employee and employer. *Id*. at 408-09. WLAD requires an employer to reasonably accommodate an employee with a disability unless the accommodation would pose an undue hardship. RCW § 49.60.180(2); *Pulcino v. Fed. Express Corp*., 141 Wn.2d 629, 639, 9 P.3d 787 (2000), overruled in part on other grounds by *McClarty v. Totem Elec*., 157 Wn.2d 214, 228, 137 P.3d 844 (2006). A reasonable accommodation must allow the employee to work in the environment and perform the essential job functions without substantially limiting symptoms. *See, e.g., Griffith v. Boise Cascade, Inc.,* 111 Wn. App. 436, 442, 45 P.3d 589 (2002). The employer must affirmatively take steps to help the employee with a disability to continue working at the existing position or attempt to find a position compatible with the limitations. *Id*. However, an employer does not have to reassign an employee to a position already occupied, create a new position, or eliminate or reassign essential job functions. *Pulcino*, 141 Wn.2d at 644. *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 777-778 (Wash. Ct. App. 2011).

As demonstrated in Section II. E. above, Watson and FedEx engaged Walloch in a robust interactive process: (1) asking Walloch for updated medical information; (2) answering Walloch's questions regarding his leave and FedEx policy; (3) communicating Walloch's concerns about processing of his workers compensation claim to Sedgwick; (4) sending Walloch copies of all open positions at FedEx; (5) looking for and suggesting potential replacement positions; (6) suggesting Walloch request accommodations, including extension of his displacement date, accommodation of his lifting restriction for a part-time RTD job, and extension of the maximum duration of his leave; (7) considering and responding to Walloch's accommodation requests; and (8) partially granting two of Walloch's three accommodation requests.

As demonstrated in Section II. E. above, FedEx accommodated Walloch by: (1) telling him he should not engage in unsafe work practices as a heavyweight RTD, should not deliver freight if he could not do so safely, and instead should return the freight to FedEx for re-delivery; (2) placing him on a leave of absence when his 25-pound restriction prevented him from performing

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

13

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

the essential job function of lifting up to 75 pounds unassisted and maneuvering anything over 75 pounds with equipment and/or assistance; (3) extending his job displacement date from January 8, 2013 to February 4, 2103; (4) extending his maximum duration date from October 8, 2013 to November 26, 2013; and (5) offering Walloch a part-time Dispatcher position, which converted to a full time position within a few months.

Walloch complained the job duties on Route 978 required him to work unsafely and would cause him to injure himself. Although an employer must accommodate a potential aggravation of a prior injury, this duty only arises under WLAD, "when the employee has notified the employer of the existence of an impairment <u>and has produced medical documentation</u> establishing a reasonable likelihood that engaging in the job functions without an accommodation would aggravate the impairment to the extent it would create a substantially limiting effect." *Garcia v. Cintas Corp.*, CV-12-3064-RMP, 2013 U.S. Dist. LEXIS 53231 at *16-17 (E.D. Wash. April 12, 2013) (emphasis added). The court held that Garcia's opinion she could not perform certain job functions, absent medical documentation, was insufficient "notice" to trigger Cintas' duty to accommodate. *Id.* at *16-21. Walloch provided no medical documentation of his inability to perform his RTD job functions until he provided Dr. Emmon's notes in October 2012. (Watson ¶¶ 14, 15) At that point, Walloch was already on his leave.

Importantly, "[t]he duty to accommodate does not require an employer to lower its performance standards, reallocate essential job functions, create new jobs, or reassign disabled employees to positions that are already occupied." *Atkinson v. UPS*, No. C94-5600FDB, 1996 U.S. Dist. LEXIS 7733, at *15 (W.D. Wash. 1996) (internal citation omitted); *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000) ("An employer need not necessarily grant an employee's specific request for accommodation."), overruled on other grounds by *McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006); *Hawley v. Travelers Cos.*, 2015 U.S. Dist. LEXIS 54122 (E.D. Wash. Apr. 24, 2015). Moreover, "[t]he employer does not have to choose the accommodation the employee prefers, but may choose between effective accommodations."

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

14

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

1    *Atkinson v. UPS*, No. C94-5600FDB, 1996 U.S. Dist. LEXIS 7733 *15 (W.D. Wash. 1996).

2        Walloch asked for a transfer from Route 978 to another route, but there was no open route

3 at the time. Instead, Walloch was told he should not engage in unsafe work practices and should

4 bring freight back to FedEx if he could not deliver it safely.

5        FedEx could not accommodate Walloch's 25 pound restriction in a part-time RTD position,

6 and instead continued his leave of absence. His request would have required another employee to

7 perform required lifting and maneuvering of freight over 25 pounds for an indefinite period. This

8 was an unreasonable request, as an employer does not have to eliminate or reassign essential job

9 functions to accommodate an employee's disability or assign his workload to other employees.

10 *Hawley v. Travelers Cos*., 2015 U.S. Dist. LEXIS 54122, 17-18 (E.D. Wash. Apr. 24, 2015).

11        FedEx's leave policy did not provide Walloch with priority placement in an open position

12 until he had permanent restrictions or was within the last 90 days of leave. He was not selected for

13 a full-time Dispatcher position in March 2013 for this reason. Instead, FedEx continued Walloch's

14 leave of absence, which at that time was paid through STD/LTD insurance coverage. Providing

15 leave, even unpaid leave, is a reasonable accommodation. *Hawley v. Travelers Cos*., 2015 U.S.

16 Dist. LEXIS 54122, 17-18 (E.D. Wash. Apr. 24, 2015) (Unpaid leave, although understandably

17 difficult for injured/disabled employees, is a recognized form of reasonable accommodation).

18        FedEx undertook efforts to find a position for Walloch. Watson sent Walloch weekly

19 notices of all open positions within the company, identified open positions she believed he was

20 qualified for and could perform with or without accommodation, assisted him in applying for open

21 positions, and ensured he received priority placement when he was in the final 90 days of his

22 leave. Walloch had a "corresponding duty" to cooperate with FedEx – to notify the company of his

23 qualifications, to apply for jobs that fit his abilities and to accept reasonable offers of employment.

24 *Molloy v. City of Bellevue*, 859 P.2d 613, 618 (Wash. App. 1993). Walloch did not forward his

25 resume or provide Watson with updated doctor's notes. Walloch voiced no interest in nor applied

26 for any open positions during the last 90 days of his leave. When he had priority placement,

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT        15
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

Walloch refused a part-time Dispatcher position, even though he would have accepted a part-time RTD position. Walloch testified he would take a part-time job if it led to full-time employment. The part-time Dispatcher position was the only open position Walloch could perform at that time, and it became full-time within a few months. Walloch's rejection of the part-time Dispatcher position was unreasonable in these circumstances. *See, e.g., Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1051 (9th Cir. 1995) (employer's offer of position that accommodated Sharpe's disability, which employee rejected, satisfied WLAD, regardless of whether previous transfer accommodated the employee's disability); *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 781 (Wash. Ct. App. 2011) (courts look to the effectiveness of the accommodation attempted at the time the employer said it satisfied its obligation under WLAD or ended its efforts).

Walloch said Derek Johnson received an unofficial accommodation in the RTD position because Johnson received assistance loading containers. (Walloch 109:11-111:9) However, Walloch's position required more lifting/pushing than Johnson's job, and Johnson's job was more easily accommodated. (Walloch 111:17-23) Further, Johnson received assistance at the station, not out on road where Walloch needed assistance. *Id.* Walloch argues FedEx could have accommodated his 25 pound restriction based upon a job analysis in Walloch's workers compensation case for his heavyweight RTD position. However, John Power, the person who prepared the job analysis, based his analysis on RTD job functions he reviewed for a case in California. Power assumed the RTD job in California had the same essential job functions as Walloch's RTD job in Seattle. (Declaration of John Power (Power) ¶ 3, 4) It did not. Shawn Moncivaiz, the hiring manager, stated the part-time RTD job Walloch applied for required lifting up to 75 pounds and maneuvering anything over 75 pounds. (Moncivaiz ¶ 3) FedEx was not required to eliminate an essential function of the job to accommodate Walloch. *Hawley v. Travelers Cos.*, 2015 U.S. Dist. LEXIS 54122, 17-18 (E.D. Wash. Apr. 24, 2015).

## C.  Walloch Fails to Establish a Claim of Retaliation.

Walloch alleges that FedEx retaliated against Walloch under WLAD because he requested

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                16
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

workplace accommodation. (Complaint at ¶¶ 3.9-3.12, Docket # 1, Exh. 2)

### 1. Walloch Cannot Establish a Prima Facie Case.

To establish a prima facie case of retaliation for a protected activity under WLAD, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there was a causal link between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005). "Adverse employment action" means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (citation omitted). To establish the causal link between the adverse action and the protected activity, "plaintiff must present evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Kelly v. County of Ventura Pers. Dep't*, 28 F.3d 106, *2 [published in full-text format at 1994 U.S. App. LEXIS 18890] (9th Cir. 1994).

Walloch cannot establish a prima facie case because he can show no causal link between his protected activity and any adverse employment action. Walloch claims the adverse employment action was FedEx's failing to accommodate Walloch or engage in the interactive process and termination of his employment. Walloch claims Embleton, Schrepfer and Little retaliated. (Complaint at ¶¶ 3.9-3.12, Docket # 1, Exh. 2; Walloch 170:8-10) As discussed above in Section II. E., FedEx engaged Walloch in the interactive process and accommodated his disability. Walloch was terminated only after he rejected a part-time Dispatcher job and exhausted his medical leave. Watson decided to terminate Walloch's employment without the participation of Embleton, Schrepfer or Little. (Watson ¶ 36)

### 2. Walloch Cannot Establish Pretext.

If the plaintiff establishes a prima facie case, then the defendant may attempt to rebut the case by presenting evidence of a legitimate, nondiscriminatory reason for the employment decision. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 70, 821 P.2d 18 (1991). The

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    17
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

burden then shifts back to the plaintiff, who can attempt to prove that the employer's reason is pretextual. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180-81, 23 P.3d 440 (2001). In Section II. E., FedEx explained why it did not grant in whole Walloch's requested accommodations for an unlimited extension of his displacement date, a 30-day provision of an assistant to help Walloch lift for the part-time RTD position and a 225-day extension of the maximum duration of his medical leave. WLAD does not require FedEx to eliminate essential functions of a job and provision of unpaid leave is a reasonable accommodation. *Hawley v. Travelers Cos*., 2015 U.S. Dist. LEXIS 54122, 17-18 (E.D. Wash. Apr. 24, 2015). FedEx terminated Walloch's employment in conformity with its leave of absence Policy P1-8 after Walloch reached (and exceeded) maximum duration of his leave without finding a replacement position. This constitutes a legitimate, non-discriminatory reason for termination. *Snapp v. Burlington N. Santa Fe Ry.*, No. 10-CV-05577-RBL, 2012 U.S. Dist. LEXIS 109258, 2012 WL 3157137 at *3-4 (W.D. Wash. Aug. 3, 2012) (finding that exhaustion of medical leave and failure to secure another position within the company—followed by termination according to policy—was a legitimate, nondiscriminatory reason for termination); *Davis v. Boeing Co.*, No. C11-1033-JCC, 2012 U.S. Dist. LEXIS 152245, 2012 WL 5248752, at *6 (W.D. Wash. Oct. 23, 2012) (finding that exhaustion of 30-month medical leave policy was a legitimate, nondiscriminatory reason for termination); *Grantz v. State Farm Mut. Auto. Ins. Co*., 420 Fed. Appx. 692, 695 (9th Cir. 2011).

Walloch believes he was retaliated against because: (1) Embleton had little communication with Walloch after he complained; (2) little was done to accommodate Walloch; (3) it took a long time to fix the mechanical issues with his truck; (4) a position was created for Bret Christiansen; and (5) Sean Cornelius got help from a handler on Route 978, but Walloch did not. (Walloch 164:12-166:3, 166:17-168:16) Walloch claims Senior Manager Tom Embleton, Station Manager Vicki Schrepfer and Managing Director Pat Little retaliated against him. (Walloch 170:8-10) As discussed above, FedEx accommodated Walloch. Repair of Walloch's truck was completed by vehicle mechanics who reported to Ron Edwards, Manager Fleet

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    18
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

Maintenance. Embleton, Schrepfer or Little had no supervisory authority over vehicle mechanics. (Embleton ¶ 10; Walloch 167:3-10) No position was created for Bret Christiansen; rather, he was disqualified from driving and placed on a personal leave of absence to compete for any open position for which he was qualified. Christiansen applied for and received a Dispatcher position posted in Career Opportunities. (Embleton ¶ 11) Schrepfer and Embleton only denied Walloch employee assistance with Route 978 when there was no one available to help Walloch. Schrepfer and Embleton also denied employee assistance to other employees, including Sean Cornelius, when no one was available to help. (Embleton ¶ 4; Schrepfer ¶ 4)

It makes no sense that FedEx was attempting to retaliate against Walloch. FedEx accommodated Walloch and offered him a part-time job as a Dispatcher, which Walloch rejected. FedEx continued to send Walloch Career Opportunities after his termination. Embleton, Schrepfer and Little had no involvement in the termination decision, which was made by Watson. Termination only occurred after Walloch exceeded his maximum duration, had not applied for any jobs during the final 90 days of leave, and rejected the part-time Dispatcher position. FedEx's actions reflect its desire to return Walloch to work, not an ulterior motive to retaliate against him because he requested accommodation. FedEx is entitled to summary judgment on his claim.

**D. Walloch Fails to Establish a Claim of Disability Discrimination.**

WLAD prohibits an employer from discriminating against or discharging an employee based on a disability. RCW § 49.60.180. The WLAD defines "disability" as "the presence of any sensory, mental, or physical impairment that (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) is perceived to exist whether or not it exists in fact." RCW § 49.60.040(7)(a). Walloch claims that FedEx failed to accommodate him, failed to engage in the interactive process and terminated him based on his disability in violation of the WLAD. (Complaint, ¶ 3.16, Docket #1, Exh. 2) The undisputed evidence demonstrates that Walloch cannot establish the elements of his claim and lacks evidence that FedEx's legitimate reasons for its actions are a pretext for intentional discrimination. FedEx is entitled to summary judgment.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                19
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

1

### 1.   Walloch Cannot Establish a Prima Facie Case.

To establish a claim for disability discrimination under the WLAD, Walloch must show: (1) he is disabled; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he seeks; and (3) he suffered an adverse employment action because of his disability. *Callahan v. Walla Walla Housing Auth.*, 110 P.3d 782, 819-20 (Wash. App. 2005). Walloch's prima facie case of disability discrimination fails because he cannot show that: (1) he was qualified to perform the essential functions of his RTD job; or (2) he suffered an adverse employment action because of his disability.

As discussed in Section II. E. above, FedEx engaged in Walloch a robust interactive process and accommodated him. Walloch lacks any evidence suggesting he suffered an adverse action due to his disability. FedEx terminated Walloch's employment under P1-8 because he had reached his maximum duration of medical leave and he failed to secure a position. Walloch does not dispute he failed to secure a position or that he reached maximum duration of leave.

### 2.   FedEx's Legitimate Reason for Terminating Walloch is Not a Pretext.

If Walloch can establish his prima facie case of discrimination, the burden shifts to FedEx to articulate a lawful, non-discriminatory reason for its actions. *Diederich v. Providence Health & Svcs.*, No. C10-1558 RAJ, 2012 U.S. Dist. LEXIS 139717, at *11-12 (W.D. Wash. Sept. 26, 2012). Once FedEx meets its burden, Walloch can prevail only by "producing 'specific' and 'substantial' facts" that show the articulated reason is a pretext for intentional discrimination. Id. at *11, 15.

Even if Walloch could establish a prima facie case of disability discrimination, FedEx has articulated a legitimate reason for terminating his employment – specifically, the expiration of his maximum duration of leave and his failure to secure a position. Policy P1-8 requires an employee to secure a position within a prescribed time period or his employment will be terminated. FedEx terminated Walloch's employment in conformity with its policy.

Courts within the Western District of Washington have found exhaustion of medical leave

FEDERAL EXPRESS CORPORATION 2601 MAIN STREET SUITE 340 IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

20

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

1    and failure to secure a position upon receiving a release to return to work to be legitimate, non-

2    discriminatory reasons for terminating an employee. *In Davis v. Boeing Co.*, No. C11-1033-JCC,

3    2012 U.S. Dist. LEXIS 152245, at *3-5 (W.D. Wash. Oct. 23, 2012), Davis could not return to

4    work after injuring his hand in an automobile accident and was terminated upon exhausting his 30

5    months of medical leave under Boeing's policy. Davis sued Boeing for terminating him based on

6    his disability. The court granted summary judgment to Boeing, finding it "ha[d] presented a

7    nondiscriminatory reason for Davis' termination:  exhaustion of the thirty-month consecutive

8    leave period." *Id*. at *19; s*ee also Grantz v. State Farm Mut. Auto. Ins. Co.*, 420 Fed. Appx. 692

9    (9th Cir. 2011)  (affirming summary judgment and agreeing that termination upon expiration of

10   medical leave was not discriminatory).

11       Similarly, in *Snapp v. Burlington Northern Santa Fe Railway*, No. 10-cv-05577-RBL, at

12   *2 (W.D. Wash. Aug. 3, 2012), Snapp suffered from sleep apnea and took medical leave for

13   surgery to rectify his condition. When his disability benefits ended, BNSF gave Snapp 60 days to

14   secure a position for which he was qualified. *Id*. at *3. BNSF terminated Snapp's employment

15   after he failed to secure a position during that timeframe, and Snapp sued BNSF for disability

16   discrimination. *Id*. at *4, 7. The court granted summary judgment to BNSF, finding it articulated a

17   legitimate reason for its actions: "Snapp inadequately followed BNSF's protocol, and BNSF

18   terminated him by standard procedure." *Id*. at *7-8.

19       Here, FedEx followed its "standard procedure" in terminating Walloch after he reached

20   maximum duration and failed to secure a position. Walloch lacks any evidence FedEx's

21   adherence to its policy is a pretext for discrimination. He admits he understood FedEx's policy

22   and has identified no instance of deviation from that policy. He acknowledges FedEx reminded

23   him of his maximum duration date, assisted him with identifying and applying for positions, and

24   offered him the only open position he could perform with his limitations. FedEx's actions reflect

25   its desire to return Walloch to work, not an ulterior motive to terminate him because of any

26   alleged disability. FedEx is entitled to summary judgment on Walloch's claim.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    21
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

### E. Walloch Cannot Establish a Claim for Age Discrimination.

Walloch alleges he was fired because of his physical limitations and his age. (Complaint ¶ 3.18, Docket #1, Exh. 2) Walloch believes he was discriminated against based upon his age because he observed a pattern of eliminating older workers who get injured. (Walloch 147:2-8)

#### 1. Walloch Cannot Establish a Prima Facie Case of Age Discrimination.

To establish a prima facie case of disparate treatment, a plaintiff must show: (1) he is a member of a protected class; (2) he performed his job satisfactorily, was qualified, and met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) the employer treated him differently from a similarly situated employee who does not belong to the same protected class. As an alternative to comparator evidence, the plaintiff can provide evidence of "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *McDaniels v. Group Health Coop.*, 57 F. Supp. 3d 1300, 1310 (W.D. Wash. 2014); *Chen v. State*, 86 Wash. App. 183, 189, 937 P.2d 612 (1997) (applying the McDonnell Douglas framework to a WLAD claim). Walloch cannot establish a claim for age discrimination because he cannot show either comparator evidence or other circumstances surrounding his termination that give rise to an inference of discrimination.

Open routes are assigned to the employee with the most seniority who bids on the route. After Walloch was displaced from Route 978, it was opened up for other employees to bid. Sam Stowers bid on Route 978 and received it because he was the only employee who bid. Stowers later quit and Route 978 opened for bidding. Mario Santini bid on and got the route on seniority. (Embleton ¶ 14) Currently, the average age for drivers in Embleton's group is 49. There are more drivers over age 60 than there are under age 30. On November 1, 2013, there were 160 employees in the workgroup with an average age of 48.35; 8.8% were under the age of 30 and 11.3% were over age 60. There was no significant change to the average age of drivers in the workgroup after Walloch's termination. On December 31, 2013, there were 157 employees in the workgroup with

FEDERAL EXPRESS CORPORATION 2601 MAIN STREET SUITE 340 IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT
Case No.:  2:14-01727-RAJ

22

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

an average age of 48.33; 8.9% were under age of 30 and 11.5% were over age 60. (Embleton ¶ 15)

Walloch identified three individuals who were terminated because they were older, injured workers: (1) Sharon Anderson; (2) Warren Smiley; and (3) Perry Peterson. (Walloch 148:8-150:6; Walloch's Response to Interrogatory No. 15 at page 9, Exh. B to Flynn Declaration) Walloch claims Anderson was terminated because she is older, but admits Anderson had performance problems and did not meet her goals. (Walloch 150:11-152:16, 153:5-16) Anderson retired after she was demoted for: (1) allowing an employee drive a FedEx vehicle without taking a required drug test in violation of DOT regulations and FedEx policy; and (2) allowing an employee drive a FedEx vehicle after he had a roll-away accident without suspending him pending an investigation as required by FedEx policy. (Embleton ¶ 13) Walloch claims Smiley was injured on the job, could not drive and was terminated rather than accommodated. (Walloch 153:17-154:13) Smiley went out on a medical leave of absence for a work-related injury. Smiley was terminated because he was not released to return to work and exceeded the maximum duration of his leave. (Watson ¶ 37) Peterson was on a medical leave for 30 months, at which point Watson terminated Peterson's employment because he had reached maximum duration of his leave and was not released to return to work. (Walloch 154:16-155:7; Watson ¶ 38) Further, had Peterson returned to work, Embleton would have terminated Peterson's employment for timecard falsification. (Embleton ¶ 19) Termination for exceeding the maximum duration of leave is a legitimate, non-discriminatory basis for termination. *Davis v. Boeing Co.*, No. C11-1033-JCC, 2012 U.S. Dist. LEXIS 152245, at *3-5 (W.D. Wash. Oct. 23, 2012).

### 2. Walloch cannot establish FedEx's reasons are a pretext for discrimination.

"A plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence' because it is inconsistent or otherwise not believable. [Citation omitted]. 'Generally, there are three types of evidence that can be used to show pretext: (1) direct evidence of discrimination, such as discriminatory statements or admissions, (2)

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643

comparative evidence, and (3) statistics.' [Citation omitted]. A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason. [Citation omitted]." *Hargrave v. Univ. of Wash.*, 2015 U.S. Dist. LEXIS 86732, 17-18 (W.D. Wash. July 1, 2015). Walloch cannot show pretext here. He offers no direct evidence of ageist comments. FedEx has legitimate reasons for terminating Anderson, Smiley and Peterson. The statistical evidence shows the average age of FedEx's work force was relatively unchanged by Walloch's termination and the workforce is on average an older workforce. There is no evidence the reasons for Walloch's termination are a pretext for discrimination or that older workers are treated more poorly.

## IV.   **CONCLUSION**

Summary judgment is appropriate here. Partial summary judgment of each cause of action is also appropriate. FedEx engaged Walloch in the interactive process and accommodated him. There is no evidence to support either a prima facie case or pretext required to support Walloch's claims for retaliation and discrimination. For each of these reasons, FedEx respectfully requests the Court grant its motion in its entirety.

DATED:  December 18, 2015                    Respectfully submitted,

| | |
|---|---|
| Jane M. Flynn, Esq. CA SBN 167466<br>**FEDERAL EXPRESS CORPORATION**<br>2601 Main Street, Suite 340<br>Irvine, California  92614<br>Tel: (949) 862-4643<br>jane.flynn@fedex.com<br><br>By:    *s/ Jane M. Flynn*<br>          Jane M. Flynn *pro hac vice* | James G. Zissler, WSBA No. 30287<br>LITTLER MENDELSON<br>600 University Street, Suite 3200<br>Seattle, WA 98101<br>Tel: (206) 623-3300<br>jzissler@littler.com<br><br>By:    *s/ James G. Zissler*<br>          James G. Zissler |

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

MOTION FOR SUMMARY JUDGMENT                    24
Case No.:  2:14-01727-RAJ

JANE M. FLYNN, ESQ.
FEDERAL EXPRESS CORPORATION
2601 Main Street, Suite 340
Irvine, CA 92614, T (949) 862-4643